(29 Misc. Rep. 315.)

## ROHNER v. LENISCH.

(Supreme Court, Appellate Term. October 25, 1899.)

BROKERS—RIGHT TO COMMISSIONS.

 Where the prospective buyer, the seller, and the broker have knowledge of the rights of other parties in the property, until a satisfactory adjustment of those rights is made there has been no meeting of the minds, and no contract has been perfected entitling the broker to commissions.

Appeal from municipal court, borough of Manhattan, Tenth district.

Action by Charles Rohner against Phillip Lenisch. From a judgment entered upon a verdict in favor of plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

P. & D. Mitchell, for appellant.

Schmuck & Graham, for respondent.

FREEDMAN, P. J. The defendant herein appeals from a judgment rendered in favor of the plaintiff in an action brought to recover for commissions alleged to have been earned as a broker in procuring a purchaser for the lease and furniture of a saloon in this city. The material facts in the case are substantially undisputed, and are as follows: The defendant was engaged in the saloon business at Columbus avenue and 109th street, having a lease of the premises for ten years, of which nearly two years had expired. There was a mortgage upon the furniture, and that, together with the written lease of the premises, were in the hands and at the office of the Lion Brewing Company, the mortgagees. After repeated solicitations on the part of the plaintiff to be allowed to find a purchaser for the lease and furniture, the defendant authorized him to make a sale thereof for the sum of $10,000. During the several conversations had between the parties leading up to the authority given the plaintiff to sell, the defendant stated that the lease had eight years longer to run, and that the rent was $1,500 per year. After the plaintiff had made some efforts to sell the property, he informed the defendant that two persons, named Blumberg and Dreyer, had agreed to give $8,000 for the property, and, after several conversations upon the subject of the price, the plaintiff testifies that the defendant said, "Bring them over." Subsequently the plaintiff brought Dreyer to the defendant's house, and introduced him to the defendant as the proposed purchaser, and said to the defendant: "Get yourself ready. We want to go to the brewery, and settle the matter up." Prior to this time the plaintiff had conducted all the negotiations regarding the sale with one Bucher, who was a partner of Dreyer, and Bucher had communicated to Dreyer all that had been said to him by Rohner (the plaintiff) regarding the terms of sale. Bucher had been to the brewery, and had ascertained the amount of the mortgage upon the property, and, as Dreyer testified, "to see what papers they had." The plaintiff testifies that when he introduced Dreyer to the defend-

ant as the proposed buyer, and as the person who would pay $8,000 for the property, the defendant said: "Well, we will see. We will go up to the brewery, and settle it." Dreyer swears that he got his information relative to the property, terms of sale, etc., from Bucher, and that at the time he went to the defendant's house with Rohner "from there we intended to make the bargain at the brewery." He also testifies that, when Rohner told Bucher that the rent was $125 per month, Bucher replied that "he [Bucher] thought he [Rohner] had made a mistake." After the introduction of Dreyer to the defendant, the parties went to the brewery, and, after some conversation between the defendant and Dreyer, the sale was not made; Dreyer saying that he refused to take the property, for the reason that the lease provided for an increased rental from $1,800 the second two years of the term to $2,000 for the remainder. It is evident, however, that such was not the real reason for his refusal to complete the purchase. The proof shows that he knew the terms of the lease, as Bucher, his partner, had been to the brewery prior to this time, and had seen the papers, and communicated their contents to him. There is another view to be taken of the testimony. The plaintiff's right to commissions depended upon his finding a purchaser able, ready, and willing to take the property upon the terms fixed by the owner. This implies and involves the agreement of the buyer and seller, the meeting of the minds of the parties, produced by the agency of the broker. The broker assumes the risk of his inability to accomplish that result. If he presents to the seller a person who is ready and willing to enter into a contract upon the terms which the seller has dictated, he has done his duty, and is entitled to his commissions, although the sale has not taken place, if it fails because the seller capriciously changes his mind after the purchaser answering to the prescribed terms has been produced. Moses v. Bierling, 31 N. Y. 462. In the case at bar that situation does not present itself. The statement, made at the time when the plaintiff was urging him to be allowed to sell the property, that the terms of the lease were $1,500 per year for the first two years of the term and $1,800 for the remainder, should be regarded, under all the facts and circumstances, as the expression of an opinion, and not the unqualified representation of a material fact relied upon by both the broker and the purchaser. The plaintiff knew that the lease, the principal subject of sale, was at the brewing company's office, and he could easily have ascertained for himself its exact terms. Moreover, the testimony is clear and convincing that it was understood by the broker, the buyer, and the seller that the brewing company had certain rights in the lease, and that a visit to and some arrangement with that company must be made before the trade could be finally completed. The minds of the parties had not met, except, possibly, as to the amount to be paid, prior to the visit to the office of the brewing company, and did not meet thereafter, and it does not appear that the defendant changed his mind after the terms of sale had been discussed. The judgment must be reversed.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.